```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DONNA SALISBURY,

                        Plaintiff,          06-CV-6629L

            v.                              DECISION
                                            and ORDER
MICHAEL J. ASTRUE[1], Commissioner
of Social Security

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff, Donna Salisbury ("Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff specifically alleges that the decision of the Administrative Law Judge ("ALJ") was erroneous because it was not supported by substantial evidence in the record and was based on an improper legal standard.

Both Plaintiff and the Commissioner move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner claims that the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor, Commissioner JoAnne B. Barnhart, as the proper defendant in this suit.

1

ALJ's decision was supported by substantial evidence in the record. The Plaintiff moves for judgment on the pleadings claiming that there is substantial evidence in the record to support her claim for SSI and DIB benefits. This court finds that there is substantial evidence in the record to support a finding of disability within the meaning of the Social Security Act. Therefore, judgment on the pleadings is granted for the Plaintiff, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff, Donna Salisbury, applied for SSI and DIB benefits on October 31, 2003. She claimed disability due to a herniated disk in her neck; back and leg pain; high cholesterol; high blood pressure; and diabetes. (Transcript of Administrative Proceedings at 62-3) (hereinafter "Tr."). Plaintiff is also obese, has a history of asthma, has been diagnosed with fibromyalgia, and suffered from shoulder rotator cuff syndrome that resulted in surgery. (Tr. at 162, 224, 369, 490-1). Plaintiff was 39 years old at the time of her application with a high school education and has past relevant work experience as a nurse's assistant and a newspaper deliverer. (Tr. at 20).

The Social Security Administration initially denied Plaintiff's application on April 13, 2004. Plaintiff thereafter filed a timely written request for an administrative hearing on

May 6, 2004.[2]  A video hearing was held before ALJ Judith Showalter, who presided from Dover, Delaware, on May 26, 2006. The Plaintiff appeared in Rochester, New York, with counsel, and testified at the hearing.  In a decision dated July 15, 2006, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals Council denied further review, and the ALJ's decision became the final decision of the Commissioner.  The Plaintiff then filed this action on December 19, 2006.

## DISCUSSION

### I. Jurisdiction and Scope of Review

Title 42, section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976).  Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] On May 14, 2004, the Administration acknowledged plaintiff's request for a hearing, and explained that "there may be a delay in scheduling your hearing.." (T. at 51) The record does not, however, explain why two years passed before plaintiff's hearing was held.

3

conclusion." Metropolitan Stevedore Co. V. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Plaintiff and the defendant both move for judgement on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405 (g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgement on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Serv., 705 F. 2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court finds that the decision of the ALJ was not supported by substantial evidence, and that there is substantial evidence in the record to support a finding of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted in favor of the Plaintiff.

**II.  Standard For Entitlement to Social Security Benefits**

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other

kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. §404.1572(a); 20 C.F.R. §416.972(a).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least

6

>    12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
>
> (4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;
>
> (5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists is significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

In this instance, the ALJ performed the required five-step analysis and found that: (1) the Plaintiff had not engaged in substantial gainful activity since May 23, 2003; (2) the Plaintiff has the following severe impairments: cervical degenerative disc disease, fibromyalgia, right shoulder rotator cuff syndrome status post surgery, and obesity; (3) the Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff is unable to perform any past relevant work; and (5) the Plaintiff has the residual functional capacity to perform a substantial range of sedentary work with occasional climbing of stairs, ramps, ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, and frequent pushing, pulling and overhead reaching with her right upper extremity. (Tr. at 21-28). The ALJ concluded that,

considering the Plaintiff's age, education, previous work experience, and residual functional capacity allowing her to perform a full range of sedentary work, the Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. (Tr. at 28). Thus, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. Id.

### III. **The ALJ Erred in Finding that the Plaitiff was Not Disabled Within the Meaning of the Social Security Act.**

This court finds that the ALJ's decision that the Plaintiff was not disabled is not supported by the substantial evidence in the record and is erroneous because the ALJ failed to give controlling weight to the opinions of the Plaintiff's treating physicians. A treating physician's opinion is given controlling weight where it is well-supported by the medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 416.927 (d)(2), 416.1527 (d)(2). The opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history. Id. When determining whether to give a physician's opinion controlling weight, the ALJ must consider (1) whether there is a treatment relationship between the physician and the claimant; (2) the length and nature of the treatment relationship; (3) the consistency of

the opinion with other medical and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) other evidence that supports or contradicts the treating physician's opinion. 20 C.F.R. §§ 416.927(d)(3)-(6), 416.1527 (d) (3)-(6). When these factors establish that the treating physician's opinion is entitled to controlling weight, the ALJ must adopt the opinion of the treating physician regardless of the findings he or she could have made in the absence of the treating physician's opinion. S.S.R. 96-p (1996). While the ultimate decision of disability is reserved to the Commissioner, the ALJ should give controlling weight to the treating physician's opinion where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527 (d)(2); See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded. S.S.R. 96-2p (1996).

The above-listed factors should also be used to determine the weight given to a consultative physician's opinion. 20 C.F.R. § 404.1527 (d)(2). However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating

physician's opinion will be given more weight than that of the consultative examining physician. See generally 20 C.F.R. §404.1527 (d). The "ALJ cannot arbitrarily substitute his or her own judgment for competent medical opinion." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). In addition, the failure of the ALJ to provide good reasons for discrediting the treating physician's opinion constitutes legal error. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1993); See also, 20 C.F.R. § 404.1527(d)(2). Thus, the "treating physician's opinion [is] binding unless contradicted by substantial evidence, and even if contradicted, [is] entitled to extra weight." Schisler v. Sullivan, 3 F.3d 563, 565 (2d Cir. 1993); see also Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

In this instance, the ALJ did not give controlling weight to the treating physicians' opinions because, "the opinions of these doctors, appear on fill-in-the-blank forms, with only marginal notes attached to them." (Tr. at 27). Likewise, the ALJ explained that she did not afford the opinions of the treating physicians any "significant weight" because "these opinions conflict with substantial evidence of record, documenting less severe limitations." Id. Without identifying other medical evidence in the record or other objective findings of other treating physicians, the ALJ concluded that the "objective evidence in the record" did not support the level of severity "that [the treating physicians] assign." (Tr. 27.) Yet the ALJ determined that the opinion of

Dr. Steven Dina, a consulting physician who examined the Plaintiff on only one occasion, should be given controlling weight over the opinions of her treating physicians, Drs. Collins, Pilcher, and Holder, who treated the Plaintiff over an extensive period of time, even pre-dating her disability onset date of May 3, 2003. Id. In doing so, the ALJ concluded that Dr. Dina's opinion "[was] not inconsistent with other substantial evidence of record." (Tr. 27.)

Dr. Dina examined the patient on December 15, 2003. (Tr. at 212). He stated that the Plaintiff complained of low back pain, neck pain, leg and knee pain, and had a history of hypertension, diabetes and asthma. Id. Dr. Dina observed that the Plaintiff was not in "acute distress" but that her gait was abnormal, she limped favoring her right leg, she had difficulty walking on her heels and toes, her squat was 40% of full, and she had lumbar flexion of 60%. (Tr. at 213). Dr. Dina diagnosed the Plaintiff with neck pain/strain, low back pain/strain, joint pain in the knees and hips, possibly due to osteoarthritis, possible osteoarthritis of the left hand, hypertension, type II diabetes, and asthma. Id. Plaintiff's prognosis, according to Dr. Dina, was "fair," and she had mild to moderate limitations, and could engage in activities with the following restrictions: avoid gripping and grasping with the left hand, avoid repetitive fine motor activities involving the left hand, avoid repetitive bending and squatting, avoid lifting medium weights, avoid fixed positions without the ability to change

positions, and avoid activities that involve balancing, walking distances, going up and down stairs, and kneeling. (Tr. at 215).

Dr. Dina's report also stated that "claimant is able to cook with help sometimes. She can clean sometimes with help to finish. She shops once per week. She can shower and dress daily. She watches TV and listens to radio." (Tr. 213.) Relying upon Dr. Dina's December 15, 2003 report, the ALJ concluded "the overall evidence suggests that the claimant have [sic] the ability to care for herself and maintain her home. Furthermore, the performance of the claimant's daily activities as described is not inconsistent with the performance of many basic <u>work</u> activities." (Emphasis added.) (Tr. 26.) There is no proof that the Plaintiff engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job. It is improper to use proof of intermittent household activity as evidence of the ability to engage in sustained activity required to hold even a sedentary job. <u>Carroll v. Secretary of Health and Human Services</u>. 705 F.2d 638, 643 (2d cir. 1983). Moreover, plaintiff's performance of chores may prove that she was not an invalid, but it says little about whether she is disabled under the Act. <u>See</u> e.g. <u>Williams v. Bowen</u>, 859 F.2d 255, 260 (2d Cir. 1988) (declaring that "a claimant need not be an invalid to be found disabled" under the Act).

Consultative physician, Dr. George Sirotenko, also saw the Plaintiff once on July 18, 2001. (Tr. at 162). He recorded a

12

history of cervical laminectomy, right knee injury, diabetes, hypertension and asthma, and listed her prognosis as "poor." (Tr. at 165).

The ALJ afforded "significant weight" to Dr. Dina's opinion despite the fact that Dr. Dina did not have a treatment relationship with the Plaintiff and only saw the Plaintiff on one occasion. Moreover, a review of the opinions of her treating physicians reveals that they are consistent with the record, and should not have been disregarded in favor of the opinion of a one-time consultative physician. See 20 C.F.R. §§ 416.927 (d)(2), 416.1527 (d)(2).

**IV.  The ALJ Erred in Failing to Give Controlling Weight to the Opinions of Plaintiff's Treating Physicians Who Collectively Treated Her Over an Extensive Period of Time.**

The record shows that Dr. Collins was Plaintiff's primary care physician and had been treating her since 1993. (Tr. at 172). The record contains reports from Dr. Collins and other doctors to whom Dr. Collins referred the Plaintiff between 1993 and 1999 for various ailments including neck pain, knee pain, and leg pain. (Tr. 167-179). On August 3, 1999, Dr. Collins reported that Dr. Brad Pilcher, a neurosurgeon, had diagnosed her with a C5-6 bulging disc, nerve encroachment, as well as a thyroid goiter, which was discovered through an MRI. (Tr. at 173). He also noted tenderness in the C5-6 cervical area and the trapezuis muscle of the shoulder.

Id. He diagnosed her with a bulging cervical disc with nerve impingement, and advised her to follow up with Dr. Collins. Id.

Dr. Collins' treatment records from September 2000 through January 2006 reveal that she continued to experience neck and back pain due to cervical disc disease; that she also had asthma, high blood pressure, and was obese. Id; (Tr. at 417, 432). On May 23, 2003 (Plaintiff's disability onset date) he reported that she came to his office complaining of lower back pain and appeared uncomfortable and could not sit because of pain. (Tr. at 396). He diagnosed her with a lumbosacral back strain with radiculopathy. He prescribed Flexeril 10 mg., Vicodin, Ibuprofen 600mg., and lumbosacral stretches, ordered an MRI, and advised her to return to neurosurgeon Dr. Pilcher. Id. She returned to Dr. Collins for a follow up visit on June 20, 2003, reporting similar symptoms, with added tingling, numbness, and pain in her left arm, and no improvement with medication. (Tr. at 393).

The Plaintiff continued to see Dr. Collins regularly, and returned on October 6, 2005 with back swelling, low back pain, and upper back pain. (Tr. 383-392). Dr. Collins referred the Plaintiff to Dr. Ziad Rifai who ordered an MRI. (Tr. at 383). Dr. Rifai diagnosed her with mild diabetic neuropathy, fibromyalgia, degenerative disc disease of the cervical and lumbar sacral spine, depression with psychogenic dizziness, and drug induced myoclonus. (Tr. at 435-36). She returned to Dr. Collins on

October 10 and 31 for follow-up appointments, and was prescribed a TENS unit on December 6, 2005, after physical therapy and various medications failed to improve her pain symptoms. (Tr. at 378-382, 377). On April 14, 2006, he reported that she had type II diabetes mellitus, hypertension, cervical disc status-post surgery, obesity, reactive airway disease, hyperlipidemia, and fibromyalgia. She was prescribed the following medications: Glucophage 500mg., Mobic 50mg., Enablex 15 mg., Soma one tab 3/day, Neurontin up to 3/day, Avandia 8mg., Albuterol, Zocor 20mg., Glucotrol 10mg., aspirin 81mg., lisinopril 10mg., and Vicodin. (Tr. at 471).

Dr. Collins completed a residual functional capacity form on September 15, 2004. (Tr. at 222). He reported that the Plaintiff could never climb, balance, stoop, crouch, kneel or crawl; she could only occasionally reach, push or pull, and that she was very limited in sitting, standing and walking. (Tr. at 222-223). He again diagnosed her with type II diabetes, hypertension, cervical disc disease, reactive airway disease, hyperlipidemia, and obesity. (Tr. at 224). He filled out similar forms in 2003, with the same diagnosis, and listed her medications at that time as Neurontin, Avandia, Ibuprofen 600mg., Vicodin 500mg., Flexeril 10mg., Zocor 20mg., Glucotrol 5mg., Metformin 500mg., and Lisinopril 10mg. (Tr. at 228-229). These forms are included in the record in addition to, and in connection with, Dr. Collins' treatment reports from 1993-2006. They are not merely "fill-in-the -blank forms"

with minimal notes attached as characterized by the ALJ. Dr. Collins' opinion should not have been disregarded as it is the opinion of a treating physician formed on the basis of continuous treatment over a significant period, supported by acceptable medical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, including the medical reports of the Plaintiff's other treating physicians, Dr. Pilcher (neurosurgeon) and Dr. Holder (pain specialist). See 20 C.F.R. § 416.927 (d)(2), §416.1527 (d)(2).

Dr. Pilcher, a neurological surgeon, first saw the Plaintiff on July 17, 1999, upon referral by Dr. Collins. (Tr. at 210-11). The Plaintiff presented with left shoulder and arm pain, left arm numbness, and neck pain, possibly due to a cervical disc herniation, for which Dr. Pilcher ordered an MRI. Id. The MRI revealed disc protrusion involving C6-7 and C5-6, and a possible thyroid cyst, however surgical intervention was not recommended at that time. (Tr. at 204, 209). Dr. Pilcher re-evaluated the Plaintiff's condition in 2001 and diagnosed a progressive left C-7 radiculopathy and worsening of the foramina stenosis. (Tr. at 202). He recommended a C6-7 cervical laminectomy and discectomy, which he performed on June 5, 2001 at Strong Memorial Hospital. (Tr. at 467). Dr. Pilcher saw her for follow-up appointments after surgery, and again in 2003 for continued neck, back and leg pain (Tr. at 200-01). On June 14, 2003 he diagnosed her with

musculoskeletal pain syndrome and prescribed physical therapy. (Tr. at 200). He informed her at this point that she was temporarily and totally disabled. Id. On August 25, 2003 he diagnosed her with significant arthritic disease in the neck and recommended pain management therapy and other conservative, non-surgical, treatment. (Tr. at 198). Dr. Pilcher's opinion is supported by medically acceptable clinical and diagnostic techniques, and is consistent with other substantial evidence in the record, including the medical evidence of Dr. Collins and Dr. Holder, described below. Thus, Dr. Pilcher's opinion, along with the opinions of Drs. Collins and Holder, should be given controlling weight. See 20 C.F.R. § 416.927 (d)(2), §416.1527 (d)(2).

Dr. Holder, a pain treatment specialist, first saw the Plaintiff on October 13, 2003. (Tr. at 283). Plaintiff complained of neck and back pain, and weakness and numbness in her left arm and hand. He initially diagnosed her with radicular low back pain, lumbar facet arthropathy, right greater than left, L3-4, L4-5, L5-S1, bilateral sacroiliitis, right greater than left, and diabetic peripheral neuropathy. (Tr. at 285). The pain radiates from her lower back into her lower extremities and also from the base of her neck into her left arm. "Medications are not working for her. They take the edge off only. What increases the severity of her symptoms is any activity especially household chores, getting in and out of her shower, walking, going up and down the

stairs. The pain has affected her sleep. She does not sleep very well at night - she averages two to three hours at a time." (Id. 283.) He prescribed epidural steroid blocks and concurrent sacroiliac joint injections as well as Neurontin 300mg., and Pamelor 10-20mg., and continued her prescriptions for Flexeril, ibuprofen, and Vicoden. Id. She continued to see Dr. Holder who reported that the epidural steroid blocks and sacroiliac joint blocks did not improve her condition. (Tr. at 276). Dr. Holder continued to treat her with medication and confirmed an order for a TENS unit on November 10, 2005. (Tr. at 276, 273).

On April 21, 2006 (approximately three years after Dr. Dina's single examination), Dr. Holder completed a residual functional capacity form in which he indicated that the Plaintiff has radicular low back pain, fibromyalgia, and diabetic peripheral neuropathy. (Tr. at 491). He opined that she was incapable of performing even low stress jobs, that she could rarely lift less than ten pounds and never lift anything heavier, and that she could rarely stand, sit and walk, and never twist, stoop, crouch, or climb. (Tr. at 492-493). He estimated that she would have to take two unscheduled breaks per hour and that she would be absent four days per month if she worked an eight hour per day job. Id. This form was accompanied by several treatment notes in the record and was consistent with the opinions and diagnosis of Dr. Collins and Dr. Pilcher. Therefore, it was error for the ALJ not to have

afforded controlling weight to the opinions of these treating physicians since they cover an extensive period of time, are supported by accepted clinical and laboratory diagnostic techniques and treatment and are consistent with other medical evidence in the record. See 20 C.F.R. § 416.927 (d)(2), §416.1527 (d)(2).

## CONCLUSION

The opinions of the treating physicians, Drs. Collins, Pilcher, and Holder, are consistent with other medical evidence in the record and support the Plaintiff's subjective complaints of disabling pain. Therefore, these opinions should be given controlling weight, and should not be disregarded in favor of the opinion of a one-time examining consultative physician. 20 C.F.R. § 416.927 (d)(2), §416.1527 (d)(2), S.S.R. 96-2p (1996).. These opinions, together with the Plaintiff's testimony, provide substantial evidence to support a finding that the Plaintiff is disabled within the meaning of the Social Security Act and that further evidentiary proceedings would serve no further purpose.

I therefore grant judgment on the pleadings in favor of the Plaintiff and remand this matter to the Social Security Administration for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                  S/Michael A. Telesca
                                _____
                                   MICHAEL A. TELESCA
                                United States District Judge

Dated:    Rochester, New York
            December 2, 2008